UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

JASON WIMBERLY,

                    Plaintiff,

        -against-

VERIZON NEW YORK INC.,

                    Defendant.

26-CV-2341 (LTS)

ORDER

LAURA TAYLOR SWAIN, Chief United States District Judge:

Plaintiff, proceeding *pro se,* has filed an "Emergency Motion for Temporary Restraining Order" requesting that the Court (1) enjoin Defendant Verizon New York, Inc., Plaintiff's broadband internet service provider, from imposing various fees resulting from Plaintiff's nonpayment for Defendant's services; (2) direct Defendant to refund or credit those fees to Plaintiff; (3) enjoin Defendant from suspending service to Plaintiff based on outstanding balances that include nonpayment-related fees; and (4) direct Defendant to restore services to Plaintiff if or when services are suspended, without imposing a service restoration fee. (ECF 7 at 41.)

The Court partially grants Plaintiff's motion to seal exhibits (ECF 6), denies Plaintiff's motion for a temporary restraining order (ECF 7 and 11), denies as premature Plaintiff's motion for leave to effect service by a non-party representative (ECF 9), and grants Plaintiff's motion for leave to exceed the word limit in his memorandum of law (ECF 8).

## DISCUSSION

### A.    Motion to Seal

Both the common law and the First Amendment protect the public's right of access to court documents. *See Nixon v. Warner Comms., Inc.*, 435 U.S. 589, 597-99 (1978); *Hartford*

*Courant Co. v. Pellegrino*, 380 F.3d 83, 91-92 (2d Cir. 2004). This right of access is not absolute, and "the decision as to access [to judicial records] is one best left to the sound discretion of the trial court, a discretion to be exercised in light of the relevant facts and circumstances of the particular case." *Nixon*, 435 U.S. at 599 (footnote omitted).

The United States Court of Appeals for the Second Circuit has established a three-part analysis to determine whether, under the common law, a document relating to a lawsuit should be made available to the public. *See Lugosch v. Pyramid Co.*, 435 F.3d 110, 119-20 (2d Cir. 2006).

First, the Court must determine whether the document at issue is indeed a "judicial document" to which the public has a presumptive right of access. *Id.* at 119. Judicial documents are those that are "relevant to the performance of the judicial function and useful in the judicial process." *Id.* (internal quotation marks and citation omitted). Pleadings are considered judicial documents. *Bernstein v. Bernstein Litowitz Berger & Grossman LLP*, 814 F.3d 132, 140 (2d Cir. 2016). Other non-pleading submissions can also be considered judicial documents. *Giuffre v. Maxwell*, 146 F.4th 165, 177-78 (2d Cir. 2025) (citation omitted). Non-pleading documents are judicial documents if they

> would reasonably have the *tendency* to influence a district court's ruling on a motion or in the exercise of its supervisory powers, without regard to which way the court ultimately rules or whether the document ultimately in fact influences the court's decision. [Footnote omitted.] Accordingly, if in applying these standards, a court determines that documents filed by a party are not relevant to the performance of a judicial function, no presumption of public access attaches.

*Brown v. Maxwell*, 929 F.3d 41, 49 (2d Cir. 2019).

Second, the Court considers the weight of the presumption of access. *Id.* "[T]he weight to be given the presumption of access must be governed by the role of the material at issue in the

exercise of Article III judicial power and the resultant value of such information to those monitoring the federal courts." *United States v. Amodeo*, 71 F.3d. 1044, 1049 (2d Cir. 1995).

Third, "the court must balance competing considerations against" the presumption of access. *Lugosch*, 435 F.3d at 120 (internal quotation marks and citation omitted). "Such countervailing factors include but are not limited to the danger of impairing law enforcement or judicial efficiency and the privacy interests of those resisting disclosure." *Id.* (internal quotation marks and citation omitted). "In any case in which some sealing of a judicial document is appropriate, the Second Circuit has directed that the Court should determine whether partial redaction of the private material is 'a viable remedy,' or whether the document presents 'an all or nothing matter.' *Bernstein v. Bernstein Litowitz Berger & Grossmann LLP*, No. 14-CV-6867 (VEC), 2016 WL 1071107, at *4 (S.D.N.Y. Mar. 18, 2016) (quoting *Amodeo*, 71 F.3d 1044, 1053), *aff'd,* 814 F.3d 132 (2d Cir. 2016).

Turning to Plaintiff's motion to seal, the Court first considers whether the submitted documents are judicial documents. Plaintiff's motion for preliminary injunctive relief, which relies on documents submitted in support of the motion, is a judicial document. Therefore, the exhibits submitted with his motion are also judicial documents because they are proffered in an effort to influence the Court's decision as to whether to grant the motion.

As to the weight of the presumption of access to be accorded these submissions, it is substantial. A strong presumption of access attaches to documents used to determine litigants' substantive legal rights. *Lugosch*, 435 F.3d at 121 (citing *Amodeo*, 71 F.3d at 1049). Here, Plaintiff proffers these exhibits to support his assertions of the irreparable harm and likelihood of success on the merits required to show he is entitled to injunctive relief. As a result, these exhibits are crucial to evaluating and ruling on the motion for preliminary injunctive relief.

Plaintiff's motion does not present countervailing factors that outweigh the presumption of access sufficiently to warrant sealing the documents in their entirety. In his motion, Plaintiff argues that the exhibits should be sealed because they contain personal financial information and protected health and medical information.[1] (ECF 6 at 3, ¶¶ 5(a) and (b).) Having reviewed the exhibits, the Court finds that redaction of certain material will suffice here. In Exhibits A (ECF 6-1) and B (ECF 6-2), the only information that approximates financial account information is the account number for Plaintiff's account with Defendant, which can be partially redacted to be consistent with Exhibits C (ECF 6-3) and D (ECF 6-4). In Exhibit B, redacting the names and

---

[1] One case that Plaintiff cites in support of his application does not appear to exist, much less stand for the proposition for which Plaintiff cites it. Plaintiff cites to *United States v. Chawla*, 453 F. Supp. 3d 571 (E.D.N.Y. 2020) for the proposition that "appendices containing sensitive financial account numbers and personal identification data" were sealed. (ECF 6 at 5, ¶ 7.) However, when the Court searched for that case using that citation, no case under that caption appeared. That citation instead leads to *United States v. Bedi*, 453 F. Supp. 3d 563 (N.D.N.Y. 2020), *rev'd and remanded,* 15 F.4th 222 (2d Cir. 2021), an opinion and order in a civil enforcement action brought by the United States that did not discuss the sealing of documents at all. Courts have previously observed that a citation to a nonexistent case suggests that Plaintiff may have used a form of generative artificial intelligence ("gen AI") to draft submissions to the Court and that gen AI hallucinated the phantom case citation. *See Park v. Kim*, 91 F.4th 610, 614 (2d Cir. 2024) (discussing case cited in a reply brief that the Second Circuit was unable to locate and attorney's admission that the case was provided by ChatGPT).

The Court reminds and warns Plaintiff that all litigants are subject to Rule 11(b)(2) of the Federal Rules of Civil Procedure, which provides, in relevant part, that "[b]y presenting to the court a . . . motion . . . an attorney or *unrepresented party* certifies that to the best of the person's knowledge, information, and belief, formed after an inquiry reasonable under the circumstances . . . the claims, defenses, and other legal contentions are warranted by *existing* law. . ." (emphases added); *see also Park*, 91 F.4th at 615 (Rule 11 requires "read[ing], and thereby confirm[ing] the existence and validity of, the legal authorities" being relied on).

The Court notifies Plaintiff that violations of Rule 11(b) can result in sanctions under Rule 11 against *pro se* parties. *See, e.g.*, *Yaroshevsky v. Karlin*, No. 25-CV-2747 (DG) (SDE), 2026 WL 522624, at *8–*12 (E.D.N.Y. Feb. 23, 2026), *report and recommendation adopted,* No. 25-CV-02747 (DG) (SDE), 2026 WL 879292 (E.D.N.Y. Mar. 31, 2026) (imposing sanctions on *pro se* lay litigant). Thus, Plaintiff must verify all aspects of any proposed court submission, including the accuracy and pertinence of all citations, and runs the risk of sanctions if he fails to do so.

email addresses of health care providers, and the specifics of medication names, and medical conditions or diagnoses would preserve both Plaintiff's privacy interest in that data and the public's access to the exhibits. Plaintiff has not shown, however, that his privacy interest, if any, in the outstanding balances owed to Defendant, the price of the transaction related to his medical condition, and his address outweigh the presumption of access and thus warrant redaction, much less complete sealing of the documents containing this data.[2]

The Court therefore directs Plaintiff to redact Exhibits A and B (ECF 6-1 and 6-2) in the following manner, then resubmit the redacted versions **within thirty days of the date of this order**.  Plaintiff must make the following redactions (i.e., render illegible the following specific information):

- the first seven digits of Plaintiff's account number wherever the account number appears in Exhibit A (ECF 6-1);

- names and email addresses of Plaintiff's healthcare providers in Exhibit B (ECF 6-2);

- names of any medications in Exhibit B (ECF 6-2); and

- names of any medical conditions or diagnoses in Exhibit B (ECF 6-2).

Plaintiff should title the redacted versions, "Redacted Exhibit A" and "Redacted Exhibit B". Redacted Exhibit A and Redacted Exhibit B will be made available on the public docket; the unredacted versions will be placed under seal.  If Plaintiff fails to submit the redacted versions of Exhibits A and B within the specified time limit, the Court will lift the restrictions on those exhibits, and they will be available electronically to the public in their entirety.

The Court directs the Clerk of Court to lift restrictions on Exhibits C and D (ECF 6-3 and 6-4) after thirty days of the date of this order.

---

[2] For example, *pro se* parties' addresses are generally required to be disclosed. *See, e.g.*, Fed. R. Civ. P. 11(a).

**B.    Motion for Temporary Restraining Order**

To obtain preliminary injunctive relief, Plaintiff must show: (1) that he is likely to suffer irreparable harm and (2) either (a) a likelihood of success on the merits of his case or (b) sufficiently serious questions going to the merits to make them a fair ground for litigation and a balance of hardships tipping decidedly in his favor. *See UBS Fin. Servs., Inc. v. W.V. Univ. Hosps., Inc.*, 660 F.3d 643, 648 (2d Cir. 2011) (citation and internal quotation marks omitted); *Wright v. Giuliani*, 230 F.3d 543, 547 (2d Cir. 2000). Preliminary injunctive relief "is an extraordinary and drastic remedy, one that should not be granted unless the movant, by a clear showing, carries the burden of persuasion." *Moore v. Consol. Edison Co. of N.Y., Inc.*, 409 F.3d 506, 510 (2d Cir. 2005) (internal quotation marks and citation omitted).

**1.    Irreparable Harm**

Plaintiff's submissions do not meet this burden because they do not show that Plaintiff is likely to suffer irreparable harm in the absence of preliminary injunctive relief. Showing irreparable harm requires Plaintiff to show that the harm is "imminent, not remote or speculative," and the harm "must be one incapable of being fully remedied by monetary damages." *Reuters Ltd. v. United Press Intern., Inc.*, 903 F.2d 904, 907 (2d. Cir 1990) (internal citations omitted).

Here, Plaintiff's submissions show that the alleged harm can be remedied without injunctive relief. For example, Plaintiff asserts that, before this action was commenced, Defendant restored service to Plaintiff twice. (Pl.'s Mem. L., ECF 7 at 10.) Furthermore, Plaintiff's exhibits describe special payment arrangements and plans currently available to

6

Plaintiff, such as a deferred payment plan for certain past due charges (ECF 10 at 3), and special protections from the suspension of service (*id.* at 2).[3]

### 2.       Likelihood of Success on Merits

Even if Plaintiff's submissions showed the likelihood irreparable harm, they would be insufficient to support the issuance of injunctive relief because they do not show a likelihood of success on the merits or sufficiently serious questions going to the merits to make them a fair ground for litigation and a balance of hardships tipping decidedly in Plaintiff's favor. Plaintiff asserts four causes of action under the following federal laws: Title III of the Americans with Disabilities Act ("ADA"), 42 U.S.C. § 12182; the Communications Act ("CA"), 47 U.S.C. §§ 201(b), 202(a), and (207); the Equal Credit Opportunity Act ("ECOA"), 15 U.S.C. §§ 1691 et seq.; and Section 504 of the Rehabilitation Act ("RA"), 29 U.S.C. § 794.[4]

Plaintiff's submissions are insufficient to show that he is likely to succeed on the merits of his claims under the ADA and RA for several reasons. First, Plaintiff pleads that Defendant suspended its services because Plaintiff's nonpayment (ECF 1 at 6, ¶ 23; ECF 7 at 10; *see also* ECF 6-1, 6-3, and 6-4), which does not show that Defendant suspended or otherwise denied services to Plaintiff based on his alleged disability. *Cf. Henrietta D. v. Bloomberg*, 331 F.3d 261, 277 (2d Cir. 2003) ("[T]he demonstration that a disability makes it difficult for a plaintiff to access benefits that are available to both those with and without disabilities is sufficient to

---

[3] Exhibits submitted in support of the motion include a summary of Defendant's policies, procedures, services, and programs, entitled "Customer rights and responsibilities", which are relevant to claims raise in Plaintiff's motion and complaint. (ECF 10.)

[4] Plaintiff also asserts five causes of action under state and city law: the Affordable Broadband Act, N.Y. Gen. Bus. L. § 399-zzzzz; the FAIR Act, N.Y. Gen. Bus. L. § 349; New York State Human Rights Law, N.Y. Exec. Law § 296; and New York City Human Rights Law, N.Y.C. Admin. Code § 8-807. If Plaintiff has stated any claims under federal law, the Court would determine whether to exercise supplemental jurisdiction of the state and local law claims.

sustain a claim for a reasonable accommodation."). Second, Plaintiff alleges that, in March 2026, Plaintiff asked Defendant for more time to pay the minimum amount needed to restore service (ECF 1 at 6–7, ¶¶ 23–27)—which Plaintiff himself describes as "an accommodation . . . necessitated by a disability-related medical expense" (*id.* at 7, ¶ 27)—but this request for more time to pay his bill does not relate to his disability; it relates to his inability to pay his bill. *See e.g.*, *Soshinsky v. First Unum Life Ins. Co.*, 4 Fed. Appx. 113, 114 (2d Cir. 2001) (affirming summary judgment rejecting ADA claim because an insurance policy distinguishing between the causes of a disability, e.g., sickness versus injury, is not discrimination on the basis of disability); *Jordan v. Chase Manhattan Bank*, 91 F. Supp. 3d 491, 507 (S.D.N.Y. 2015) ("[N]o provision of federal law requires . . . entities to treat disabled persons more favorably than non-disabled persons . . . [or] require defendants to postpone or forego [] foreclosure" based on disability, but instead requires entities "to place disabled persons on equal footing with similarly situated non-disabled persons—no worse, and no better."); *Rodriguez v. Westhab, Inc.*, 833 F. Supp. 425, 427 (S.D.N.Y. 1993) ("the [Americans with] Disabilities Act and the Fair Housing Act bar discrimination because of disability, but they do not bar eviction or other declination to deal with a person because of that person's inability to meet reasonable requirements of a provider (regardless of cause of such inability).").

Third, Plaintiff concedes that the various nonpayment-related fees are facially neutral (*id.* at 8, ¶ 31, at 12, ¶ 52) and "are applied uniformly across [Defendant's] subscriber base" (*id.* at 8, ¶ 31) based on nonpayment—regardless of a subscriber's disability. Finally, Plaintiff's exhibits describe Defendant's various programs for relief based on medical emergency and disability (ECF 10), and thus seemingly undercut the merits of Plaintiff's ADA cause of action, i.e., by

raising fair grounds for questioning whether Plaintiff's requested accommodation was reasonable.

Even if Plaintiff were to have carried his burden, under Rule 65 of the Federal Rules of Civil Procedure, the Court would still be unable to grant this relief *ex parte*. The rule authorizes courts to issue a temporary restraining order only if "specific facts . . . clearly show that immediate and irreparable injury, loss, or damage will result to the movant before the adverse party can be heard in opposition" and the movant "certifies in writing any efforts made to give notice and the reasons why it should not be required." Fed. R. Civ. P. R. 65(b)(1). Plaintiff has not proffered that he reached out to Defendant or that he would be irreparably harmed before opposition could be heard. Plaintiff misplaces his reliance on *Henrietta D.* because that injunction was a permanent one, entered after a bench trial. *Id.*, 331 F.3d at 264–65. Rule 65(b)(1) therefore did not apply in *Henrietta D*. The Court thus cannot grant this relief *ex parte*.

Accordingly, Plaintiff's motion for a temporary restraining order (ECF 6–7, 10–12) is denied.[5] The Court will fully address Plaintiff's complaint in due course.

### CONCLUSION

The Court grants Plaintiff's motion to seal, ECF 6, to the extent that he is directed to redact the portions of ECF 6-1 and 6-2 as described earlier in this order and resubmit the redacted versions for public filing, titling them as Redacted Exhibit A and Redacted Exhibit B, **within thirty days of the of the date of this order**. The Court directs the Clerk of Court to place

---

[5] Plaintiff asserts that he seeks prohibitory, not mandatory, injunctive relief, and thus need not meet the higher standard of a clear or substantial likelihood of success. This argument, however, conflicts with his request for an order that, among other things, directs Defendant to "permanently refund or credit" the various fees "to his account" (Pl. Mem. L., ECF 7 at 41), which is in the nature of mandatory relief. Because Plaintiff has not shown even a likelihood of success on the merits, Plaintiff is not entitled to injunctive relief on this record.

9

under seal the unredacted versions of ECF 6-1 and 6-2 and make the redacted versions of ECF 6-1 and 6-2 available on the public docket upon receipt thereof. The Clerk of Court is directed to lift the restrictions on ECF 6-3 and 6-4 after thirty days of the date of this order.

The Court grants Plaintiff's motion for leave to file his memorandum of law in excess of the word limit, ECF 8.

The Court denies Plaintiff's motion for leave for a nonparty representative to serve summons and complaint, ECF 9, as premature without prejudice to renewal if necessary.

The Court denies Plaintiff's motion for a temporary restraining order, ECF 11, for the foregoing reasons.

The Court directs the Clerk of Court to terminate these motions on the docket.

The Court certifies under 28 U.S.C. § 1915(a)(3) that any appeal from this order would not be taken in good faith, and therefore *in forma pauperis* status is denied for the purpose of an appeal. *Cf. Coppedge v. United States*, 369 U.S. 438, 444-45 (1962) (holding that an appellant demonstrates good faith when he seeks review of a nonfrivolous issue).

SO ORDERED.

Dated:    June 12, 2026
          New York, New York

/s/ Laura Taylor Swain
LAURA TAYLOR SWAIN
Chief United States District Judge

10